UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| VOLVO GROUP NORTH AMERICA, LLC d/b/a VOLVO TRUCKS NORTH AMERICA, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FORJA DE MONTERREY S.A. de C.V., a Mexican company,<br><br>Defendant. | Civil Action No. 1:16 CV 114 |

# FORJA DE MONTERREY, S.A. DE C.V.'s
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
# MOTION TO COMPEL PRODUCTION OF DOCUMENTS

# TABLE OF CONTENTS

                                                                           Page

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 3

I.   Volvo Has Not Completed a Reasonable and Diligent Search for the Forecast and Delivery Data Requested by Forja ............................................................................ 3

II.  The Data Requested By Forja Is Critical to This Case ................................................. 6

III. Forja Cannot Use Forecast and Delivery Data in Its Possession Without Substantial and Undue Burden ...................................................................................... 8

CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cardenas v. Dorel Juvenile Grp., Inc.*,
   2006 U.S. Dist. LEXIS 37465 (D. Kan. June 1, 2006) ............................................................. 3

*Covington v. Syngenta Corp.*,
   225 F. Supp. 3d 384, 393 (D.S.C. 2016) ............................................................................. 4, 5

*Dickard v. Okla. Mgmt. Servs. for Physicians, LLC*,
   2007 U.S. Dist. LEXIS 62851 (W.D. Ark. Aug. 24, 2007) ................................................... 4, 5

*Johnson v. Ford Motor Co.*,
   2017 U.S. Dist. LEXIS 70556 (S.D. W. Va. May 9, 2017) .................................................. 4, 5

*McWatters v. Cherry Creek Strategic Advisory, LLC*,
   2014 U.S. Dist. LEXIS 88966 (W.D. Mi. July 1, 2014) ........................................................... 8

*Nycomed US Inc. v. Glenmark Generics Ltd.*,
   2010 U.S. Dist. LEXIS 82014 (E.D.N.Y. Aug. 11, 2010) ........................................................ 3

*Peterson v. Ne. Local Sch. Dist.*,
   2015 U.S. Dist. LEXIS 133578 (S.D. Oh. Sept. 30, 2015) .................................................. 4, 5

*Robinson v. City of Arkansas*,
   2012 U.S. Dist. LEXIS 23806 (D. Kan. Feb. 24, 2012) ........................................................... 3

**Other Authorities**

Fed. R. Civ. P. 26 .................................................................................................................. 3

Forja de Monterrey S.A. de C.V. ("Forja") respectfully submits this reply memorandum of law in further support of its Motion to Compel Production of Documents (Dkt. No. 52, 53).[1]

## PRELIMINARY STATEMENT

Volvo admits that the data requested by Forja is relevant and that Volvo has not produced it. Volvo instead argues that it has exhausted its search for the data and produced all that it could find: virtually nothing. That argument is belied by the plain fact that, prior to the filing of this motion, Volvo's counsel acknowledged that Volvo had not completed its search for the requested data. Volvo promised to update Forja on its search, but never did. Now, Volvo has pulled a one-eighty by claiming that it has done all that it could. But, despite repeated requests, Volvo has yet to make its e-discovery liaison available for a conference with Forja's e-discovery liaison to allow the two to discuss the steps that Volvo has purportedly taken to locate the data and whether the data could be located through other means.[2] At this juncture, Volvo's recalcitrance warrants the Court's intervention.

Volvo also tries to downplay the significance of the requested data by arguing that, although it is "relevant," it is not "critical." The distinction that Volvo draws is inapposite for current purposes, and, its position that the data is not "critical" defies a

---

[1] The parties are currently attempting to resolve their discovery disputes. However, since a resolution has not yet been reached, Forja files this reply to address Volvo's arguments and to preserve its position if a resolution is not ultimately reached.

[2] On the eve of the filing of this motion, Volvo informed Forja that it would allow its e-discovery liaison to confer with Volvo's e-discovery liaison but that the meet-and-confer would have to wait until the following week.

1

basic understanding of Forja's defense. In this action, Volvo has sued Forja on the ground that Forja did not timely deliver axle beams ordered by Volvo, which allegedly caused Volvo to incur $12 million in expedited shipping charges. Forja contends, among other things, that any failure on its part to timely deliver beams was caused directly by Volvo's breach of its obligations under the Uniform Commercial Code and the terms dictating the parties' relationship to provide good faith, reliable, and accurate forecasts of the number of beams that Volvo needed on each delivery date. In other words, had Volvo not breached its commitment as to forecasts, Forja would not have had any issues in timely delivering beams to Volvo.

To support its defense, Forja has requested that Volvo produce documents related to the number of beams ordered by Volvo on the date of each forecast, changes in the forecasts after they were transmitted, the number of beams actually delivered, etc. These documents would help Forja establish its defense that Volvo frequently changed its forecasts after they were transmitted, thereby impeding Forja's ability to timely deliver the beams ordered in the most recent forecast. Thus, it cannot be seriously contested that these documents are not "critical" to the case, and it is unfathomable that a sophisticated manufacturer like Volvo cannot retrieve and produce this basic information.

Lastly, Volvo claims that Forja already received the information it seeks in the ordinary course of business and that Volvo has offered to enter into a stipulation regarding its forecasts and the number of parts actually shipped. However, the data that Volvo transmitted in the ordinary course of business cannot be translated into a usable format by Forja without substantial burden. If Volvo has the data in a more decipherable

format (which it likely does), it should produce it.  It is only after the data has been produced and analyzed that the parties can, if necessary, enter into a stipulation envisioned by Volvo.

Accordingly, Forja requests that the Court order Volvo to undertake a diligent and reasonable search for the data requested by Forja and to produce it.

## ARGUMENT

### I. Volvo Has Not Completed a Reasonable and Diligent Search for the Forecast and Delivery Data Requested by Forja

The producing party is obligated to undertake a "reasonable inquiry" to search for relevant, non-privileged documents requested by the other party.  *See* Fed. R. Civ. P. 26(g).  Although the search does not need to be perfect, the rules require it to be performed "competently, diligently, and ethically."  *Cardenas v. Dorel Juvenile Grp., Inc.*, 2006 U.S. Dist. LEXIS 37465, at *23 (D. Kan. June 1, 2006).  When a party "engage[s] in halfhearted and ineffective efforts to identify and produce relevant documents," it "jeopardize[s] the integrity of the discovery process."  *Robinson v. City of Arkansas*, 2012 U.S. Dist. LEXIS 23806, at *14 (D. Kan. Feb. 24, 2012).  To preserve that integrity, the "obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produce responsive documents."  *Nycomed US Inc. v. Glenmark Generics Ltd.*, 2010 U.S. Dist. LEXIS 82014, at *9 (E.D.N.Y. Aug. 11, 2010) (internal quotations omitted).

3

A party cannot avoid its discovery obligations by mere conclusory assertions that it has produced all responsive documents.  *See Covington v. Syngenta Corp.*, 225 F. Supp. 3d 384, 393 (D.S.C. 2016) (finding as "unsatisfactory" counsel's assertions that it had "produced all responsive documents in his possession, and [counsel] has been and is actively seeking the documents that [Defendant] asserts are outstanding"); *Johnson v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 70556, at *54 (S.D. W. Va. May 9, 2017) (noting that a party seeking to limit discovery may not rely on "broad conclusory statements").  When the adequacy of a search has been challenged, the producing party must "disclose in the affidavit the particular parameters of [its] searches and the details of the steps [it] took to locate responsive documents."  *Peterson v. Ne. Local Sch. Dist.*, 2015 U.S. Dist. LEXIS 133578, at *2-*3 (S.D. Oh. Sept. 30, 2015); *see also Dickard v. Okla. Mgmt. Servs. for Physicians, LLC*, 2007 U.S. Dist. LEXIS 62851, at *14 (W.D. Ark. Aug. 24, 2007) (finding it reasonable to require the defendant to "describe in detail the effort it has made to 'preserve, search for, identify, collect, review, and produce relevant document[s]' . . . , particularly where the [d]efendant is contending that no documents exist").

Here, the record demonstrates that Volvo has not undertaken reasonable and good faith efforts to search for the forecast and delivery data requested by Forja.  (Dkt. 53 at 6.)  Initially, Volvo stated that it would produce the data, but then recalcitrated, only to agree to produce it again.  (*Id.*)  Volvo then informed Forja that it had produced the data, but when Forja identified deficiencies in it, Volvo acknowledged that the data "is incomplete, and may be inaccurate" and that it had yet to complete its investigation as to

4

where the data is stored and how it could be extracted for production. (*Id.* at 6-7.) Forja requested Volvo to provide an update on the "nature of the efforts that Volvo has undertaken to collect and produce EDI data, what documents have been retrieved, what efforts remain to be undertaken, and whether and when Volvo will be able to produce EDI information from its own systems to Forja." (*Id.*; Dkt. 54-8 at 3.) But this update never came, compelling Forja to file the instant motion. Volvo's conduct does not comport with good faith.

In its response, Volvo changes course and asserts that "there is nothing to compel" because it has already searched "all relevant electronic systems" and has come up empty. (Dkt. No. 60 at 7; Ex. 16 at 1.)[3] This conclusory assertion falls short of the level of particularity required of the producing party to disclose the efforts it has made to search for, collect, and produce responsive data. *See Covington*, 225 F. Supp. 3d at 393; *Johnson*, 2017 U.S. Dist. LEXIS 70556, at \*54; *Peterson*, 2015 U.S. Dist. LEXIS 133578, at \*2-\*3. Moreover, Volvo's assertion is belied by the representation it made immediately prior to Forja filing this motion—that it had not yet completed its search.

More recently, Volvo has advanced yet another excuse to avoid the production of the requested data. In a telephonic conference call on November 5, 2018, Volvo claimed that forecasting information cannot be produced because it is not preserved in its systems for more than one year after it is generated. (Ex. 17 at 2.) But this representation, too, is dubious. For one, Volvo never previously informed Forja about this issue. In fact, on

---

[3] Ex. __ refers to exhibits annexed to the Declaration of Gabriela Bersuder in Further Support of Forja's Motion to Compel Production of Documents.

August 31, 2018, Volvo informed Forja that "[w]e do anticipate that at least some data from one or more systems will be identified as responsive and be produced." (Dkt. No. 54-5 at 1.)  Moreover, the ESI Order required Volvo to "[p]rovide notice of any problems reasonably anticipated to arise in connection with e-discovery."  (Dkt. No. 38 § 3(e).)  But Volvo's ESI disclosures omitted any mention that the most critical data related to this case disappears from its systems after a year.  (Ex. 18.)  Even more, the data that Volvo did produce before—albeit incomplete—contains forecast and delivery data for a ***three-year*** period.  (Dkt. No. 54-8 at 1-2.)[4]  When asked how it could generate data going back three years while at the same time claim that the data disappears after one year, Volvo could provide no comprehensible response other than to say that the data it had produced had been extracted from various "collateral" sources for a "business analysis."  (Ex. 17 at 2.)  There is no reason why data from the same collateral data sources that were used for a "business analysis" cannot be collected and produced to Forja.

As evidenced by its ever-changing excuses and conduct, Volvo has not undertaken good faith and reasonable efforts to locate the data that Forja has requested.  It should be ordered to conduct a reasonable search and to produce the data forthwith.

## II.     The Data Requested By Forja Is Critical to This Case

Although this issue is largely academic because Volvo concedes that the data Forja requested is relevant, Forja is compelled to clarify Volvo's apparent confusion as to why the data is critical.

---

[4] As Forja explained in its Motion to Compel, this spreadsheet was incomplete and appeared to be inaccurate.  (Dkt. No. 53 at 6-7.)

6

Case 1:16-cv-00114-NCT-JEP   Document 64   Filed 11/09/18   Page 9 of 15

Volvo's claim is premised on the allegation that Forja "was required to make and deliver the beams in accordance with certain EDI schedules and agreed-upon delivery plans." (Dkt. No. 60 at 3.) Volvo cites "warning" letters it sent to Forja alleging that Forja had failed to meet Volvo's forecasts (*id.*), but it omits critical facts. For instance, Volvo does not mention that the terms governing the parties' relationship during the relevant time period prohibited Volvo from changing its forecasts for axle beams after they were delivered. Specifically, the contract acknowledged that changes of more than 25% within the sixteen-week forecast could affect Forja's performance and Volvo was prohibited from changing its forecasts at all within 4 weeks prior to delivery for one Volvo company that Forja supplied and 6 weeks for another. (Ex. 19, 2010 Price Agreement § 4.) Moreover, Volvo does not mention that, in contravention of these terms, it repeatedly changed its forecast within the 16-, 6-, and 4-week time periods. Volvo's own employees acknowledged as much in their internal correspondence, noting that the forecasts that Volvo provided Forja were not reliable.[5]

Volvo has known about this defense for some time, and it also knows that the requested data would help establish that any failure on Forja's part to timely deliver Volvo's axle beams was caused by Volvo's repeated changes to its forecasts, in breach of the governing terms. Given that the data has the potential to completely wipe out Volvo's claim, it is not surprising that Volvo has been purportedly unable to locate it.

---

[5] (Ex. 20, VOLVO_00007991-92 (the employee responsible for buying parts from Forja acknowledging that Volvo's EDI had not provided any forecasts related to a particular part to Forja and thus Forja was "balking at ordering steel for an unknown quantity"; in response to inquiry as to whether "the forecast we are getting to the supplier is wrong," another employee conceded that "it isn't the full picture").)

7

### III. Forja Cannot Use Forecast and Delivery Data in Its Possession Without Substantial and Undue Burden

Volvo's suggestion that it should be excused from producing the requested data because it was provided to Forja in the ordinary course of business should be rejected out of hand. "The allegation that the opponent already has a copy of a disputed piece of evidence does nothing to satisfy the responding party's discovery obligation." *See McWatters v. Cherry Creek Strategic Advisory, LLC*, 2014 U.S. Dist. LEXIS 88966, at *9 (W.D. Mi. July 1, 2014) ("Defendant will be required to produce copies of all correspondence between plaintiff and defendant, whether or not defendant thinks that plaintiff has a copy of the correspondence already."). Thus, Volvo cannot avoid production simply because it may have transmitted the data to Forja in the ordinary course of business.

More importantly, the forecast and delivery data in Forja's possession is in a completely different format than the format in Volvo's possession. The data in Forja's possession cannot be analyzed without substantial and undue burden. That is so because it consists of hundreds of individual .txt files that were transmitted by Volvo on a weekly basis during a 3-year time period and that contain substantial coding that is nearly indecipherable. (*See, e.g.*, Ex. 21.) On the other hand—based on the limited data that Volvo has produced—it is clear that the data in Volvo's possession can be analyzed without any significant burden because it was maintained in a more structured database format, not in the types of .txt files in Forja's possession. Forja should not be saddled with the substantial and undue burden of inputting data from hundreds of .txt files into a

8

database and then de-coding that data while Volvo sits on a database that can spit out the same data in an easily decipherable format without much burden.  Volvo should be ordered to produce that data.

Lastly, Volvo claims that it is willing to work with Forja on the issue by agreeing to a stipulation as to the data.  The stipulation that Volvo envisions was actually first proposed by Forja, and Forja remains interested in such a stipulation.  But Volvo ignores the fact that any stipulation on the issue would first require the aggregation and analysis of the data, which cannot be done until Volvo produces the data from its files.

## CONCLUSION

Based on the foregoing, Forja respectfully requests that the Court grant Forja's Motion to Compel Production of Documents.

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

_____
Erik Haas
Muhammad Faridi
Gabriela Bersuder
Jacob F. Siegel
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

*Attorneys for Forja de Monterrey, S.A. de C.V.*

/s/ Andrew W. Lax_____
Andrew W. Lax
NC State Bar No. 13014
FORREST FIRM, P.C.

9

521 E. Morehead St., Suite 405
Charlotte, NC 28202
Phone/Fax: (980) 495-2450
*Attorney for Forja de Monterrey, S.A. de C.V.*

10

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), I certify that this document contains fewer than 3,125 words, excluding the parts of the document that are exempted by Rule 7.3(d). This certificate was prepared in reliance on the word count feature of the word processing software used to prepare this document.

Dated: November 9, 2018

By  */s/ Andrew W. Lax*
Andrew W. Lax
(N.C. State Bar No. 13014)
E-mail: andy.lax@forrestfirm.com
Forrest Firm, P.C.
521 East Morehead Street, Suite 405
Telephone: 980.495.2450

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

Dated: November 9, 2018                FORREST FIRM, P.C.

                                       By  /s/ Andrew W. Lax
                                           Andrew W. Lax
                                           (N.C. State Bar No. 13014)
                                           E-mail: andy.lax@forrestfirm.com
                                           Forrest Firm, P.C.
                                           521 East Morehead Street, Suite 405
                                           Telephone: 980.495.2450

12