IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| VOLVO GROUP NORTH AMERICA, LLC d/b/a VOLVO TRUCKS NORTH AMERICA, a Delaware limited liability company, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:16-cv-114 |
| FORJA DE MONTERREY S.A. de C.V., A Mexican company, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Loretta C. Biggs, District Judge.

Plaintiff, Volvo Group North America, LLC ("Volvo"), initiated this breach of contract action against Defendant, Forja de Monterrey S.A. de C.V. ("Forja"), on February 15, 2016. (ECF No. 1.) In response, Forja alleged counterclaims for breach of contract and fraudulent inducement. (ECF No. 25 at 23.) Volvo thereafter moved to dismiss Forja's fraudulent inducement counterclaim. (ECF No. 27.) In a March 31, 2018 Order, this Court denied Volvo's motion, without prejudice, due to the parties' failure to adequately brief a threshold conflict-of-laws issue: whether Forja's fraudulent inducement claim should, like Volvo's breach of contract claim, be adjudicated under the law of New York, or, instead, the law of either North Carolina or Forja's home country of Mexico. (*See* ECF No. 31 at 1–3.)

Following this Court's Order, on August 22, 2018, the parties entered into a Joint Stipulation providing that "New York law will govern Forja's Fraud Counterclaim without regard to conflict-of-laws principles under New York law." (*See* ECF No. 61-1 at 3.) By letter

that same day, the parties requested that this Court "So Order" the Joint Stipulation and formalize its effect. (*See* ECF No. 62 at 6.) This Court agreed to entertain the parties' request upon submission of a formal motion and accompanying brief. (*Id.*) Accordingly, on November 5, 2018, the parties filed a joint motion and accompanying memorandum, pursuant to Federal Rule of Civil Procedure 7(b)(1), asking this Court to enter the August 22, 2018 Joint Stipulation and apply New York law to Forja's counterclaim for fraudulent inducement. (ECF No. 61.)

Having considered the Joint Stipulation and accompanying memorandum as evidence in evaluating the conflict-of-laws issue, the Court concludes that New York substantive law should apply to Forja's fraudulent inducement counterclaim.

**I.  DISCUSSION**

The business relationship between Volvo and Forja is governed, in part, by a Purchase Agreement (the "Purchase Agreement"). (ECF No. 20-2.) The Purchase Agreement contains a short, generic choice-of-law provision (the "choice-of-law clause"), which reads "[t]his Purchase Agreement shall be governed by and construed in accordance with the laws of the State of New York." (*See id.* ¶ 6.1.11.)

From the outset of this case, the parties and this Court have agreed that, pursuant to the choice-of-law clause, New York substantive law should apply to Volvo's breach of contract claim. (*See* ECF No. 23 at 3 n.2.) However, there was initial disagreement between the parties as to whether the scope of the choice-of-law clause was broad enough to also encompass Forja's counterclaim for fraudulent inducement. In briefing its motion to dismiss that claim, Volvo asserted, without explanation or support, that New York law should govern. (*See* ECF

2

No. 28 at 10.) Forja responded that the Purchase Agreement's choice-of-law clause was "drafted narrowly" and took the position that, as a general matter, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract." (ECF 29 at 12–13 (citing *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005).) Nevertheless, Forja suggested that this Court "need not decide at this juncture" whether the law of New York (the choice-of-law clause's selection) or North Carolina (the forum state) should apply because its fraudulent inducement claim would survive dismissal "under the law of either state." (*Id.* at 13.)

The parties' thin discussion of this important threshold issue—whether Forja's fraudulent inducement claim should fall within the ambit of the choice-of-law clause—raised more questions than it answered. (*See* ECF No. 31 at 3 (pointing out, for instance, that neither party had appeared to consider whether North Carolina conflict-of-laws rules might dictate that Mexican tort law should apply to Forja's counterclaim).) This Court, therefore, denied Volvo's motion to dismiss but kept open the possibility of further briefing and discussion. (*Id.*) As explained above, the parties took the Court's Order as an opportunity to confer, and Forja now agrees with Volvo that New York law should apply to its counterclaim for fraudulent inducement. (*See* ECF No. 61-1 at 3.)

This Court has some reservations about allowing the parties to stipulate to governing law long after a cause of action has arisen and litigation has commenced, and where, as here, the parties initially disagreed over the scope of the relevant choice-of-law provision.[1]

---

[1] In a footnote to their supporting memorandum, the parties direct this Court to a Seventh Circuit case, *City of Clinton v. Moffitt*, for the proposition that "[l]itigants can, by stipulation, formal or informal, agree on the substantive law to be applied to their case, within broad limits." (*See* ECF No. 62 at 9

3

Moreover, as a federal court sitting in diversity, this Court has a duty to apply North Carolina's conflict-of-laws rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, further discussion of those rules is warranted to ensure that the Joint Stipulation comports with North Carolina law.

### A. Which Law Determines the Scope of the Choice-of-Law Clause

As is sometimes the case, to properly answer one conflict-of-laws question, this Court must first answer another. The choice-of-law clause states that the Purchase Agreement shall be "governed by and construed in accordance with the laws of the state of New York," but does not specify whether the term "laws" includes New York's conflict-of-laws rules.[2] (ECF No. 20-2 ¶ 6.1.11.) When confronted with such ambiguity, "[the] question is itself a matter of the choice-of-law rules of the forum state." *See Pyott-Boone Elecs., Inc. v. IRR Tr. For Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 542 (W.D. Va. 2013). As far as this Court can tell, North Carolina courts have not addressed the precise question of whether, absent express language, the conflict-of-laws rules of the state selected in a choice-of-law clause should apply. Thus, this Court must forecast how the North Carolina Supreme Court would rule, if given the chance. *See Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999) ("To forecast a decision of the state's highest court we can consider, *inter alia*: canons of construction, restatements of

---

(citing 812 F.2d 341, 342 (7th Cir. 1987).) However, there is no discussion in the parties' memorandum, nor, for that matter, in *Clinton* itself, about how far those "broad limits" extend.

[2] The parties clarify, in their Joint Stipulation, that they would prefer that "New York law will govern" the fraudulent inducement claim "without regard to conflict-of-laws principles under New York law." (ECF No. 61-1 at 3.) However, the choice-of-law clause itself only provides that "[t]his Purchase Agreement shall be governed by and construed in accordance with the laws of the State of New York," without any reference to conflict-of-laws principles. (*See* ECF No. 20-2 ¶ 6.1.11.)

4

the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions.").

When, as here, a choice-of-law clause provides that an agreement will be governed by the "laws" of a particular state, it may be unclear whether the parties intended the *whole law* of that state—including the state's conflict-of-laws rules—to apply. *See* John F. Coyle, *The Canons of Construction for Choice-of-Law Clauses*, 92 Wash. L. Rev. 631, 643 (2017). The most widely held view on this issue, that of the Restatement (Second) of Conflict of Laws, is that, absent contrary language in a choice-of-law provision, the "laws" selected are the *local* or *internal* laws of the chosen state, exclusive of its conflict-of-laws rules. *See* Restatement (Second) of Conflict of Laws § 186(b) (Am. Law Inst. 1971); *see also Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597 (8th Cir. 2007) (reasoning that, to apply the whole law of the selected state "would basically give effect to that provision *before* the court's analytical determination of what effect it should have"). As Professor John F. Coyle explains, if "the purpose of a choice-of-law clause is to ensure a uniform choice of law, irrespective of forum," then that purpose is furthered by "interpreting the term 'law' or 'laws' to refer to a body of laws that cannot redirect the parties to the law of still another jurisdiction." *See* 92 Wash. L. Rev. at 643 (citing Restatement (Second) Conflict of Laws § 187(3) cmt. h). In sum, the goals underlying choice-of-law provisions are certainty and uniformity, and courts should embrace an interpretive method that fosters these goals.

Under North Carolina law, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co., Inc. v. Byrd*, 261 S.E.2d 655, 656 (N.C.

5

1980). The best way to give "effect" to a choice-of-law clause is to ensure, where possible, that its "basic objectives, namely those of certainty and predictability," are achieved. *See* Restatement (Second) Conflict of Laws § 187(3) cmt. h; *Bueltel v. Lumber Mut. Ins. Co.*, 518 S.E.2d 205, 209 (N.C. Ct. App. 1999) (explaining that, when confronted with a choice-of-law clause, "the parties' intent must rule"). Moreover, the North Carolina Court of Appeals, "following the logic of [the North Carolina Supreme Court]," has reasoned that "it is apparent that when a choice of law provision is included in a contract, the parties intend to make an exception to the presumptive rule that the contract is governed by the law of the place where it was made." *Bueltel*, 518 S.E.2d at 209 (citing *Tanglewood*, 261 S.E.2d 655). Construing the term "laws" in a choice-of-law clause to include the selected state's conflict-of-laws rules—which may themselves instruct that the law of a wholly different forum should govern—risks thwarting that intent.

For these reasons, this Court forecasts that the North Carolina Supreme Court would likely interpret a choice-of-law clause which provides that a contract "shall be governed by and construed in accordance with the laws of the State of New York" as referring only to the internal law of New York, exclusive of that state's conflict-of-laws rules. Accordingly, this Court will apply North Carolina's, rather than New York's conflict-of-laws rules to determine whether the choice-of-law clause at hand should apply to Forja's fraudulent inducement claim.

### B. Whether the Choice-of-Law Clause Covers Fraudulent Inducement

Having determined that North Carolina conflict-of-laws rules should apply, the Court must now consider how the North Carolina Supreme Court would interpret the scope of the choice-of-law clause. State and federal courts have taken a number of different approaches

when it comes to determining the proper scope of a generic choice-of-law clause. *See* 92 Wash. L. Rev. at 667; *Pyott-Boone*, 918 F. Supp. 2d at 544 (noting that "whether choice-of-law provisions encompass torts and other non-contract claims is unsettled"). Some courts have adopted a presumption that a generic choice-of-law clause does *not* cover non-contractual claims. *See, e.g.*, *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (holding that a generic choice-of-law clause did not cover a claim for fraudulent misrepresentation); *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999) (holding that a fraudulent inducement claim was not covered by a contract's choice-of-law clause). In contrast, other courts have determined that generic choice-of-law provisions *can* cover non-contract claims, so long as the claims bear some relation to the contract itself. *See, e.g.*, *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992) (applying the law selected in a generic choice-of-law clause to fraud claims related to a contract); *Pyott-Boone*, 918 F. Supp. 2d at 546 (holding that, in light of the "close relationship of the tort claims to the contract," applying chosen law to fraud claim was appropriate) (citation omitted).

Once again, it appears that North Carolina has not addressed this precise question.[3] Accordingly, this Court must predict how it believes the North Carolina Supreme Court would rule in an appropriate case. North Carolina courts recognize that "[i]t is the simple law of

---

[3] The Western District of North Carolina, sitting in diversity, has addressed whether a generic choice-of-law clause could cover certain non-contractual claims. *See Synovus Bank v. Coleman*, 877 F. Supp. 2d 659, 668–69 (2012). Although the court correctly stated that "North Carolina courts apply different choice of law rules depending on the type of claim asserted," its analysis of the scope of the choice-of-law clause appears to have been driven by the specific provision before it, which only provided that "[a]ny legal questions in this agreement will be decided by South Carolina law." *See id.* at 668. Faced with that narrower language, the court appears not to have considered whether the North Carolina Supreme Court might have construed it to encompass "closely related" torts, like fraudulent inducement. In contrast, the choice-of-law provision here, which broadly provides that the agreement between the parties shall be "governed by" the laws of New York, warrants deeper consideration.

contracts that as a man consents to bind himself, so shall he be bound." *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 377 (N.C. 2008) (citation and quotation omitted). To that end, "[p]arties' choice of law is generally binding on the interpreting court as long as they had a reasonable basis for their choice and the law of the chosen [s]tate does not violate a fundamental policy of the state of otherwise applicable law." *Cable Tel Servs., Inc., v. Overland Contracting, Inc.*, 574 S.E.2d 31, 34 (N.C. Ct. App. 2002) (citation omitted). A North Carolina court interpreting a choice-of-law provision would, therefore, aim to give effect to the intent of the parties, unless the provision is unreasonable, unlawful, or contrary to public policy. *See id.*; *Tanglewood*, 261 S.E.2d at 656.

In attempting to give such effect to contractual intent, many courts outside of North Carolina have found it reasonable to assume that, when sophisticated parties agree to a choice-of-law clause, the law selected in that clause should apply to all causes of action arising from or substantially related to their contract. *See, e.g., Pyott-Boone*, 918 F. Supp. 2d at 544; *Plum House IV, Inc. v. Wells Fargo Merch. Servs., LLC*, No. CCB-15-2294, 2016 WL 337492, at *3 (D. Md. Jan. 28, 2016). Along these lines, the Supreme Court of California has written that

> [it is right to doubt that] any rational businessperson, attempting to provide by contract for an efficient and businesslike resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. Nor do we believe such a person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.

*Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1154 (Cal. 1992). Likewise, the Delaware Court of Chancery has observed that "[t]o layer the tort law of one state on the contract law

8

of another state compounds . . . complexity and makes the outcome of disputes less predictable, the type of eventuality that a sound commercial law should not seek to promote." *ABRY Partners V., L.P. v. F&W Acquisition LLC,* 891 A.2d 1032, 1048 (Del. Ch. 2006). Under this view, torts that are "related" to a contract claim are generally governed by the same law set forth in the contract's choice-of-law clause. *See, e.g.*, *Masters Grp. Int'l, Inc. v. Comerica Bank*, 352 P.3d 1101, 1115–16 (Mont. 2015) ("It is reasonable . . . to infer that [sophisticated and counseled entities] intended the choice-of-law provision to apply to all disputes arising out of their dealings."). A number of courts in the Midwest, following the lead of the Eight Circuit's seminal decision in *Northwest Airlines v. Astraea Aviation Services*, have adopted a variation of this approach which instructs that only those claims "*closely* related to the interpretation of the contracts" may be encompassed by a generic choice-of-law provision. *See* 111 F.3d 1386, 1392 (8th Cir. 1997) (emphasis added); *see, e.g.*, *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1032 (D. Minn. 2013) (concluding that claims for fraud, deceptive trade practices, and misappropriation of trade secrets were so "closely related" to the contract claim that they were covered by a choice-of-law provision, but a claim for tortious interference was not so "intertwined").

Taking a more formalistic view, other courts have chosen not to apply generic choice-of-law clauses to related torts unless the clause itself is "sufficiently broad." *See Krock*, 97 F. 3d at 645 (explaining that, under New York conflict-of-laws rules, "in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties") (citation omitted). For those courts, the parties' intent is also

9

paramount. However, intent, in their view, is best effectuated by construing choice-of-law clauses narrowly, rather than broadly, as subtle differences in text reflect negotiated choices made by sophisticated contracting parties. *Compare State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 289–290 (Tex. Ct. App. 1990) (applying a choice-of-law clause that selected the law governing "validity, construction and enforcement" of a promissory note to contract claims but not to related tort claims) *with Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309–10 (2d. Cir. 1994) (concluding that a choice-of-law clause covering any controversy "arising out of or relating to" a contract was "sufficiently broad" under Texas law "to cover tort claims as well as contract claims.").

In *Hitachi Credit America Corporation v. Signet Bank*, the Fourth Circuit drew on aspects of both of the approaches discussed above. *See* 166 F.3d 614, 628 (4th Cir. 1999). There, the plaintiff asserted claims for both breach of contract and fraud. *Id.* at 619. A choice-of-law clause in the parties' contract called for the application of Virginia law in the interpretation of "th[e] [a]greement and the rights and obligations of the parties hereunder . . . including all matters of construction, validity and performance." *Id.* at 624. Ordinarily, Virginia conflict-of-laws rules dictate that "where a cause of action arises in tort," as fraud does, "the law of the state where the tortious conduct or injury occurred [applies]." *Id.* at 628. However, the Fourth Circuit reasoned that "[w]here a choice of law clause . . . is *sufficiently broad* to encompass contract-related tort claims such as fraudulent inducement," courts may "honor[ ] the intent of the parties to choose the applicable law." *Id.* (emphasis added). Ultimately, the court found the choice-of-law clause at issue to be sufficiently broad and, recognizing the "*close relationship*

10

of the tort claims to the contract," applied Virginia law to the fraud claim. *Id.* (emphasis added).

Despite the differences in these approaches, the above discussion reveals a consistent theme: fidelity to the contracting parties' intent. For the following reasons, this Court believes that, were it confronted with the facts and context of this particular case, the Supreme Court of North Carolina would likely decide that the best way to "give effect to the intent of the parties," *Duke Power Co. v. Blue Ridge Elec. Membership Corp.*, 117 S.E.2d 812, 816 (N.C. 1961), would be to construe the choice-of-law clause as encompassing Forja's fraudulent inducement claim.

First, Forja's fraudulent inducement claim is closely related to the Purchase Agreement. The parties' business relationship under the Purchase Agreement began nearly a decade before the alleged misrepresentation at the heart of the counterclaim, (*See* ECF Nos. 20-2 at 10; 25 at 23–24), and the subject matter of the claim itself—that Volvo fraudulently induced Forja into renewing their existing purchase-and-supply agreement—concerns an extension of that business relationship, (*See id.* at 37–38). Thus, the fraudulent inducement counterclaim closely relates not just to contract formation, but to the operation of a long-term relationship between the parties. This Court believes that the North Carolina Supreme Court would, like the courts of California, Delaware, and other states, recognize Volvo and Forja as sophisticated commercial parties seeking certainty and uniformity in a longstanding business relationship and construe their choice-of-law provision to support those goals. *See Nedlloyd*, 834 P.2d at 1153–54; *ABRY Partners,* 891 A.2d at 1048; *Masters Grp.*, 352 P.3d at 1115–16. The Joint

Stipulation, which, above all, demonstrates a desire for convenience, supports these notions. (*See* ECF Nos. 61-1; 62 at 6.)

Second, the Restatement (Second) of Conflict of Laws takes the position that "questions involving the effect of misrepresentation, duress, undue influence and mistake upon a contract are determined *by the law chosen by the parties*." Restatement (Second) Conflict of Laws § 201 cmt. a (emphasis added). The North Carolina Supreme Court has, on several occasions, adhered to the Restatement when addressing other conflict-of-laws questions. *See, e.g.*, *Boyles v. Boyles*, 302 S.E.2d 790, 793 (N.C. 1983) (citing Restatement (Second) of Conflict of Laws § 92 when discussing the contours of "full faith and credit"); *Lloyd v. Babb*, 251 S.E.2d 843, 861 (N.C. 1979) (citing Restatement (Second) of Conflict of laws § 15 in determining domicile). This Court believes it would likely also do so here.

Finally, the North Carolina General Assembly's recent activity in this area suggests an effort to streamline and simplify the operation of choice-of-law provisions between commercial entities. Pursuant to North Carolina General Statutes § 1G-3, parties to a business contract may now agree "that North Carolina shall govern their rights and duties in whole or in part," regardless of whether the contract bears a reasonable relation to North Carolina or is contrary to the public policy of the jurisdiction whose law would otherwise apply. *See* N.C. Gen. Stat. § 1G-3 (2017). Although this statute only applies to choice-of-law clauses that select North Carolina law, it indicates a preference for uniformity and certainty shared by those courts adhering to the "closely related" approach discussed above. Thus, to the extent the North Carolina Supreme Court finds related actions by the General Assembly to be persuasive, § 1G-3 adds additional weight to the scale.

In sum, this Court believes that (a) the longstanding duration of the parties' agreement, (b) the "close relationship" between Forja's fraudulent inducement counterclaim and that agreement, and (c) the parties' express desire to uniformly apply the laws of New York to all claims in this case would lead the North Carolina Supreme Court to construe the choice-of-law clause to encompass the fraudulent inducement counterclaim. Accordingly, the Court considers the parties' Joint Stipulation as evidence of the intent underlying the choice-of-law clause in the Purchase Agreement and concludes, based on its forecast of how the North Carolina Supreme Court would likely decide this issue, that New York law should apply to Forja's fraudulent inducement counterclaim.

For the reasons stated herein, the Court enters the following:

## ORDER

It is therefore ORDERED that the parties' joint motion, (ECF No. 61), is GRANTED to the extent that the Court will consider the Joint Stipulation as evidence of their contractual intent.

It is FURTHER ORDERED that this Court shall apply New York law, exclusive of New York conflict-of-laws rules, to Forja's counterclaim for fraudulent inducement.

This, the 4th day of October 2019.

/s/ Loretta C. Biggs
United States District Judge